RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0218p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

JOHN EWALT, STEVE WYLIE, and BONNIE NAVARRE, on
behalf of themselves and all others similarly situated,

*Plaintiffs-Appellants*,

*v.*

GATEHOUSE MEDIA OHIO HOLDINGS II, INC., dba The
Columbus Dispatch,

*Defendant-Appellee*.

No. 25-4015

───────────────

Appeal from the United States District Court for the Southern District of Ohio at Columbus.
No. 2:19-cv-04262—Michael H. Watson, District Judge.

Decided and Filed:  August 5, 2026

Before:  GIBBONS, THAPAR, and READLER, Circuit Judges.

───────────────

## COUNSEL

**ON BRIEF:**  Todd H. Neuman, Rick L. Ashton, Jeffrey R. Corcoran, ALLEN STOVALL
NEUMAN & ASHTON LLP, Columbus, Ohio, for Appellants.  Michael J. Zbiegien, Jr., Lynn
Rowe Larsen, Daniel H. Bryan, TAFT STETTINIUS & HOLLISTER LLP, Cleveland, Ohio,
James D. Abrams, TAFT STETTINIUS & HOLLISTER LLP, Columbus, Ohio, for Appellee.

───────────────

## AMENDED OPINION

───────────────

READLER, Circuit Judge.  As the district court aptly observed, this case has proceeded
as a metaphorical "ping pong" ball, bouncing between Ohio's federal and state courts.  The latest
iteration has the case back in federal court, but only because the district court agreed to equitably
toll the 30-day deadline for removing the case.  28 U.S.C. § 1446(b)(1).  Helpfully for us, the
Supreme Court recently addressed the viability of equitable tolling in the removal context.

*Enbridge Energy, LP v. Nessel ex rel. Michigan*, 146 S. Ct. 1074 (2026).  But unhelpfully for defendant GateHouse Media Ohio Holdings II, the Supreme Court held that § 1446(b)(1)'s 30-day deadline cannot be equitably tolled.  *See id.* at 1086.  Because *Enbridge* forecloses GateHouse's equitable tolling argument, and because there is no other basis for authorizing GateHouse's otherwise untimely removal, we reverse the district court's judgment with instructions to again remand the case to state court.

I.

Over six years ago, plaintiffs filed a putative class action lawsuit against GateHouse in Ohio state court.  GateHouse timely removed the case to federal court, invoking federal jurisdiction under the Class Action Fairness Act of 2005 (CAFA).  *See* 28 U.S.C. § 1332(d).  For most of the next five years, the parties litigated the dispute in its new federal home.  Eventually, the district court issued an order denying plaintiffs' motion for class certification.  GateHouse's victory in defeating class certification, however, came with at least one apparent downside.  In the same order, the district court remanded the case to state court, concluding that the district court could no longer exercise jurisdiction over the case following the denial of class certification, and declined to exercise supplemental jurisdiction.

Back in state court, the case sat idle for eight months until plaintiffs filed a renewed motion for class certification on January 24, 2025.  The filing spurred GateHouse to once more remove the case to federal court, this time on February 18, 2025, within 30 days of plaintiffs' filing, again invoking CAFA as the basis for federal jurisdiction.  Plaintiffs viewed this latest removal effort as untimely and accordingly moved to remand the case to state court.  The district court, however, denied the motion.

Plaintiffs sought an interlocutory appeal of the district court's order pursuant to 28 U.S.C. § 1453(c)(1).  We accepted plaintiffs' petition to review.  *In re John Ewalt, et al.*, No. 25-0309 (6th Cir. Dec. 22, 2025).  As plaintiffs' petition raises a question of law, we review the district court's order de novo.  *See Graiser v. Visionworks of Am., Inc.*, 819 F.3d 277, 282 (6th Cir. 2016); *Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 404 (6th Cir. 2007).

II.

Two federal statutes set the legal backdrop for GateHouse's appeal.  The first is CAFA, which affords federal district courts original jurisdiction over a class action if the "matter in controversy exceeds the sum or value of $5,000,000," 28 U.S.C. § 1332(d)(2), the parties are minimally diverse, *id.* § 1332(d)(2)(A), and the class contains 100 or more members, *id.* § 1332(d)(5)(B); *see also Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013).

The second is the statute governing the removal of civil actions to federal court, 28 U.S.C. § 1446.  *See also* 28 U.S.C. § 1453(b) (providing that class actions may be removed to federal court in accordance with § 1446).  Relevant here is the statute's timing requirement.  To remove a case from state to federal court, a defendant customarily must file a notice of removal in federal court "within 30 days after the receipt by the defendant . . . of the initial pleading."  *Id.* § 1446(b)(1).  Although this "default deadline" is not jurisdictional in nature, the Supreme Court recently explained, it is nonetheless a "strict" and "mandatory" requirement for removing a case, *Enbridge Energy*, 146 S. Ct. at 1082, one that, in practice, allows for threshold removal questions to be resolved "early and conclusively," *id.* at 1084.

A.    With this statutory framework in mind, we turn to today's question:  Was GateHouse's February 2025 removal of plaintiffs' class action timely under 28 U.S.C. § 1446? And we begin with a background point of agreement, namely, that plaintiffs' 2019 complaint triggered GateHouse's statutory 30-day removal deadline.  GateHouse does not contest that plaintiffs' complaint satisfied CAFA's key requirements for establishing federal jurisdiction (e.g., amount in controversy, minimal diversity, and class size).  *See* 28 U.S.C. § 1332(d)(2). Nor does GateHouse suggest that the initial pleading lacked "solid and unambiguous information that the case [was] removable," which otherwise might serve as grounds for delaying the commencement of the 30-day deadline.  *Berera v. Mesa Med. Grp., PLLC*, 779 F.3d 352, 364 (6th Cir. 2015) (quoting *Holston v. Carolina Freight Carriers Corp.*, No. 90-1358, 1991 WL 112809, at *3 (6th Cir. June 26, 1991) (table) (per curiam)); *see* 28 U.S.C. § 1446(b)(3). Because the action was removable when the initial pleading was filed in accordance with § 1332(d), the filing of plaintiffs' 2019 complaint triggered § 1446(b)'s 30-day removal clock.

*See Berera*, 779 F.3d at 364. As a result, GateHouse was statutorily required to remove the case within 30 days of receipt of the complaint.

GateHouse did so. GateHouse filed a notice of removal on September 24, 2019, within 30 days of August 27, 2019, the date GateHouse was served with plaintiffs' complaint. And for five years, the parties proceeded in federal court until the district court remanded the case sua sponte in May 2024, following its denial of plaintiffs' motion for class certification.

As mentioned, GateHouse sought to remove the case a second time after plaintiffs moved to certify a class in state court in January 2025. That removal, however, took place long after the initial 30-day removal deadline expired in 2019—in fact, over 2,000 days after GateHouse received plaintiffs' 2019 class action complaint. GateHouse's removal thus exceeded the 30-day limit in § 1446(b). Without more, there is no basis for the case to remain in federal court.

B.1. GateHouse, however, believes there is in fact more. To begin, it asserts that plaintiffs' class certification effort in state court following remand effectively reset the removal clock. We disagree.

Again, CAFA provides federal courts with jurisdiction over a particular set of putative class actions. *See* 28 U.S.C. § 1332(d). As a general matter, whether federal jurisdiction exists is assessed "at the time an action is commenced." *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991). It follows that we customarily resolve whether a lawsuit satisfies CAFA's jurisdictional requirements at the time of filing. And where, as here, the complaint provides "solid and unambiguous information that the case [was] removable," the 30-day removal clock begins to run. *Berera*, 779 F.3d at 364.

Critically, once commenced, that clock cannot be reset by later developments in a case, including those tied to class certification. *See Metz v. Unizan Bank*, 649 F.3d 492, 500 (6th Cir. 2011). As a general rule, federal "jurisdiction," once established, "may not be divested by subsequent events." *Freeport-McMoRan,* 498 U.S. at 428. That rule applies with full force in the CAFA context. As we have previously recognized, "Congress did not base CAFA jurisdiction on a civil action being 'certified' as a class action, but instead on an action being 'filed under' the rule governing class actions." *Metz*, 649 F.3d at 500. Accordingly, a motion in

state court to certify a case as a class action, as occurred here, does not serve as a basis for retriggering the 30-day removal clock so long as the original complaint contained "solid and unambiguous information that the case [was] removable." *Berera*, 779 F.3d at 364. Once the default removal clock started ticking, GateHouse had exactly 30 days to remove. And once that time lapsed, the "forum question ha[d] been put to rest" and was "conclusive[]" as to the rest of the litigation. *Enbridge Energy*, 146 S. Ct. at 1084.

True, as GateHouse emphasizes, § 1446(b)(3) affords a defendant 30 days from "receipt" of a paper from the plaintiff "from which it may be first ascertained that the case is . . . removable" so long as "the case stated by the initial pleading is not removable." But in this case, plaintiffs' initial pleading—its 2019 complaint—was removable (a fact GateHouse acknowledges). In other words, plaintiffs' class certification motion in state court was not the first time GateHouse could have ascertained that the case was removable under CAFA. So § 1446(b)(3) is not applicable.

2. These same considerations similarly foreclose GateHouse's related assertion that the district court's remand order, which also denied class certification, affected the removal timeline. As just explained, GateHouse's 30-day clock for removal began to tick at the time plaintiffs filed their complaint. And, again, once that time lapsed, the "forum question ha[d] been put to rest," a conclusion that could not be altered by later developments in the litigation. *Enbridge Energy*, 146 S. Ct. at 1084.

Admittedly, the district court's May 2024 remand was improper, as the district court commendably recognized. A "denial of class certification," as occurred here, "does not divest federal courts of [CAFA] jurisdiction." *Metz*, 649 F.3d at 500 (citation modified); *see also* 2 *Newberg and Rubenstein on Class Actions* § 6:18 (6th ed. 2022) ("[I]t presently appears beyond doubt that if, in handling a case in which subject matter jurisdiction is premised solely on CAFA, a federal court denies class certification, it nonetheless retains subject matter jurisdiction over the remaining individual action."). By our count, every circuit court to speak on the issue has agreed that CAFA jurisdiction survives the denial of class certification. *See Kress Stores of P.R., Inc. v. Wal-Mart P.R., Inc.*, 121 F.4th 228, 236 (1st Cir. 2024) (holding that if jurisdiction is otherwise proper under CAFA when the action is filed in or removed to federal court, a district court

retains CAFA jurisdiction after denying class certification); *F5 Cap. v. Pappas*, 856 F.3d 61, 76 (2d Cir. 2017) (same); *Coba v. Ford Motor Co.*, 932 F.3d 114, 119 (3d Cir. 2019) (same); *Cunningham Charter Corp. v. Learjet, Inc.*, 592 F.3d 805, 806 (7th Cir. 2010) (same); *Buetow v. ALS Enters., Inc.*, 650 F.3d 1178, 1182 n.2 (8th Cir. 2011) (same); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Shell Oil Co.*, 602 F.3d 1087, 1091–92 (9th Cir. 2010) (same); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 n.12 (11th Cir. 2009) (same); *see also Louisiana v. Am. Nat'l Prop. & Cas. Co.*, 746 F.3d 633, 635 (5th Cir. 2014) (explaining that CAFA jurisdiction is determined at time of removal and that federal courts retain jurisdiction over individual claims severed from the class); *Dutcher v. Matheson*, 840 F.3d 1183, 1193 (10th Cir. 2016) (holding that courts must decide whether a lawsuit is a class action when it is filed, not when it rules on class certification); *Nichols v. 300 M St. Dev. Grp.*, 783 F. Supp. 3d 273, 276 (D.D.C. 2025) (McFadden, J.) (holding that federal courts retain jurisdiction over claims even if events subsequent to removal eliminate class allegations and reduce the amount recoverable).  Put another way, with CAFA vesting the district court with original jurisdiction over the claims regardless of certification, the district court did not need to assess whether it could exercise supplemental jurisdiction over the individual claims upon denying class certification.  *See Metz*, 649 F.3d at 500; *see also Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1220 (11th Cir. 2020).  In short, the case should not have been remanded.

Yet even in this unusual setting, the district court was not authorized to absolve GateHouse of the untimeliness of its second removal.  In excusing the company's delay and denying plaintiffs' motion to remand, the district court tolled the 30-day timeline on the ground that the court's "remand [order] introduced ambiguity about CAFA jurisdiction" and, consequently, "GateHouse could not unambiguously ascertain CAFA jurisdiction."  Order, R. 295, PageID 20997.  The court admirably sought to "not punish GateHouse for the Court's mistake."  *Id.*  But in the removal context, we face a harsh reality:  The removal clock is unforgiving and cannot be equitably tolled.  *See Enbridge Energy*, 146 S. Ct. at 1084 (holding that § 1446(b)(1)'s time limitation is not subject to equitable tolling).  Any "equitable, case-specific exceptions," *id.* at 1083, like the one crafted here by the district court, are incompatible with the "strict, mandatory terms" of § 1446(b)(1)'s 30-day requirement, *id.* at 1082.  Congress devised a comprehensive timeline for removal, and there is no indication that it may be tolled

outside the explicit statutory exceptions. *Id.* at 1082–83; *see, e.g.*, 28 U.S.C. § 1446(b)(3) (providing an extension when a case at first appears unremovable but it is later "ascertained that the case is . . . or has become removable"); *id.* § 1446(c)(3) (providing an exception to the one-year removal limit in diversity cases if plaintiff acts in bad faith to prevent removal). Neither the district court nor this Court has license to craft a new exception where Congress, in its own discretion, has set forth an explicit list by statute. *Enbridge Energy*, 146 S. Ct. at 1083. Because § 1446(b)(1)'s 30-day removal requirement is not subject to equitable tolling and because GateHouse's re-removal to federal court was untimely, the case must return to state court no matter the balance of the equities.

*          *          *

We recognize the obvious reality that GateHouse's fate was largely the result of an error it did not commit. While we are powerless to turn back time and remedy the error, GateHouse was not similarly powerless in the face of the district court's remand order. GateHouse had good-faith legal arguments that the case should have remained in federal court even after class certification was denied. Yet GateHouse stayed silent. The company neither filed a motion contesting the district court's remand order nor attempted to seek certification of that order for interlocutory appeal. *See* 28 U.S.C. § 1453(c)(1). *Compare Ruhlen v. Holiday Haven Homeowners, Inc.*, 28 F.4th 226, 228–29 (11th Cir. 2022), *with Watkins v. Vital Pharms., Inc.*, 720 F.3d 1179, 1181 (9th Cir. 2013). To be sure, the state of play here was atypical. Yet that reality does not change the fact that GateHouse had opportunities to address the matter in a timely fashion. Regrettably, its belated attempt to do so came too late in the day.

For these reasons, we reverse the district court with instructions to remand to state court.

*          *          *          *          *

In its petition for panel rehearing, GateHouse asks us to amend our disposition by eliminating our instruction to the district court to remand this case to state court. To GateHouse's mind, doing so would allow the district court the opportunity to consider GateHouse's Rule 60(b) motion, which sought relief from the district court's May 2024 remand order. GateHouse, however, has forfeited that issue. GateHouse's appellate brief mentioned its

Rule 60(b) motion only once, and in a footnote at that.  And there, GateHouse referenced only that the "case could still be remanded" without making any argument on the point.  Appellee Br. at 8 n.2.  That passing reference falls short of preserving the issue for our review.  *See United States v. Dairy Farmers of Am., Inc.*, 426 F.3d 850, 856 (6th Cir. 2005) ("An argument contained only in a footnote does not preserve an issue for our review."); *Buetenmiller v. Macomb Cnty. Jail*, 53 F.4th 939, 947 (6th Cir. 2022) (explaining that an argument raised in only one sentence in a brief is deemed forfeited); *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed [forfeited]." (citation modified)); *see also Dimond Rigging Co. v. BDP Int'l, Inc.*, 914 F.3d 435, 449 (6th Cir. 2019) (explaining "when an appellant does not comply by listing *all* the issues presented for review in the statement of issues, the appellant [forfeits] that argument").  True, GateHouse develops the argument in its petition for rehearing.  But a petition for rehearing is not a vehicle for advancing arguments that could have appeared in a party's opening appellate brief.  *See Easley v. Reuss*, 532 F.3d 592, 593–94 (7th Cir. 2008).  So we decline to consider the argument now.